## Lutes, et al. v. Fayette Home Telephone Company, et al.

(Decided October 29, 1913).

### Appeal from Fayette Circuit Court.

1. Municipal Corporations—Powers of Council—When Motives Will Not Be Inquired Into.—When the exercise of authority by a city council is within its power, the motives that influenced it will not be inquired into, except in rare cases, where it is manifest

that a flagrant wrong has been perpetrated upon the public, and valuable rights have been surrendered ostensibly for the public good, but really for the benefit of private individuals.

2. Municipal Corporations—Power of Council to Legislate—Right to Repeal or Amend Legislation.—The power of a city council to legislate carries with it by implication, except as specifically prohibited or eliminated by charter or constitutional provisions, the right to repeal or amend such legislation by subsequent action of the same body.

3. Municipal Corporations—Power to Modify Contract.—The power to· modify a contract on behalf of a municipality, generally is vested in the officer or body authorized to make the contract; and generally, the common council has power, with the consent of the other party, to modify a municipal contract previously entered into, so as to bind the city.

4. Municipal Corporations—Sale of Telephone Franchise—Contract Provision—Repeal of.—Where a municipality sold a telephone franchise under and as required by section 164 of the Constitution, and entered into a contract with the purchaser of the franchise, by which the charges for telephone service were fixed and guaranteed by the company, the city, through its common council, and the telephone company, which owned the franchise, may subsequently repeal the contract provision as to the guaranty of prices for telephone service, and agree upon a different scale of charges.

5. Municipal Corporations—Scale of Charges by Telephone Company —Agreement Between Municipality and Telephone Company.—A citizen has no vested right in a scale of charges agreed upon by a municipality and a telephone company; the municipality and the telephone company may, by agreement, change the scale of charges without the consent of the citizen.

6. Overruled Cases .—So much of the opinion in Louisville & Taylorsville Turnpike Road Co. v. Boss, 19 Ky. L. R., 1959, 44 S. W., 981, as apparently holds that a citizen has a vested right in the toll-rates of a turnpike company after they have been fixed by the Act of the Legislature creating the corporation, and that they cannot be subsequently changed by the Legislature with the consent of the corporation, was not necessary for the decision of that case, is not sustained by authority, and is overruled.

WM. H. HOLT and J. A. EDGE for appellants.

ALLEN & DUNCAN, SHELBY & SHELBY and CHARLES KERR for appellees.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

In 1899 several citizens of Lexington incorporated the Fayette Telephone Company, with a capital stock of $6.000.00. The purpose of this corporation was to con-

struct and operate a telephone system in Lexignton and Fayette County.

By a joint resolution approved July 17, 1899, the general council of the city of Lexington gave the Fayette Telephone Company permission to erect, maintain and operate a telephone system and exchange in the city of Lexington, and to use its streets for that purpose, providing, in accordance with the proposition of the telephone company, that the maximum rentals for telephone service should be $30.00 per annum for business telephones, and $18.00 per annum for residence telephones. The Fayette Telephone Company shortly thereafter disappeared as an active organization, and need not be further mentioned.

In February, 1901, the Fayette Home Telephone Company was incorporated under the laws of West Virginia, with a capital of $250,000.00, for the purpose of constructing and operating a telephone exchange in Lexington and Fayette County. The incorporators of the Fayette Home Telephone Company were principally, but not wholly, the same persons who had theretofore incorporated the Fayette Telephone Company. The capital stock of the Fayette Home Telephone Company was increased by amendment to $300,000.00, and by a subsequent amendment to $400,000.00.

In referring to the new corporation, the Fayette Home Telephone Company, we will speak of it hereafter as the Telephone Company.

A franchise authorizing the construction and operation of a telephone company in the city of Lexington was, by order of its general council, sold on March 4, 1901, to the highest and best bidder. The Lexington Home Telephone Company became the purchaser at the sale. In its bid the company had proposed, among other things, and as a part of the consideration for the franchise, that it would guarantee that its rates for telephones in the city of Lexington should never exceed $30.00 per annum for business houses and offices, and $18.00 per annum for residences. The bid of the company was duly accepted by ordinance directing the Mayor to make a contract with the company in accordance with its bid, which was done.

The Telephone Company complied with its contract by erecting, at great expense, a telephone exchange and system in the city of Lexington and Fayette County; but after it had been in operation about three years, and

finding that it was making little or no money at the rates then charged, it applied to the city council of Lexington for an alteration in its contract of 1901, with respect to rates. In response to that request, the general council, by ordinance approved February 8, 1904, provided for a supplementary contract between the city of Lexington and the Telephone Company, releasing the guarantee of the Telephone Company as to the rates to be charged for telephone service. After reciting the previous ordinance and contract of 1901, and that neither party thereto had contemplated that the telephone exchange to be operated under said franchise would exceed 600 or 800 telephone subscribers; and that the company had, by that time, more than 2,000 telephones in daily use; that the cost of operating each phone is much greater in a plant of 2,000 phones than in a plant of 1,000 phones or less, while the value of the phone is correspondingly greater to the subscriber, the ordinance provided:

"Section 1. That the Mayor be and he is hereby authorized and empowered for and on behalf of the city, to enter into a supplementary contract with the Fayette Home Telephone Company, amending said former contract by releasing said company from its guarantee therein made as to the rates to be charged for telephones and for toll connections."

In accordance with this ordinance a supplementary contract was made on February 29, 1904, where the Telephone Company was released from its guarantee made in its contract of 1901 as to the rate to be charged for the rental of telephones, by striking out that provision in the former contract. Under this new contract the annual rates for telephone service were first raised to $42.00 for business houses and $24.00 for residences.

The appellant, Keene Lutes, who was plaintiff below, applied to the Fayette Home Telephone Company for a telephone to be placed in his residence at the rate of $18.00 per annum, the rate called for by the original contract of 1901; and the company having declined to do so, Lutes instituted this action on June 6, 1907, in which he set up the foregoing facts, and prayed that the action proceed for the benefit of himself and all other persons similarly situated, for whom he sued; that a receiver be appointed to take charge of and control the Telephone Company; that the contract of 1904 between the Telephone Company and the city be declared void; and that

by a mandatory injunction the Telephone Company be compelled to furnish telephone service under the original contract of 1901.

The petition contained many other charges, including those of fraud in obtaining the supplemental contract of 1904, and waste in the management of the corporation. The court, upon motion, struck from the petition all the allegations of fraud with reference to the procuring of the second contract of 1904; all the allegations with regard to a trust existing in favor of the telephone users, and the right to a receivership, as well as the allegations relating to the bond and stock issues of the Telephone Company, and the wasting and squandering of its corporate assets. The effect of this ruling was to leave in the original petition practically one issue only, to-wit, the validity of the act of the city council of February 4, 1904, and the execution of the supplementary contract thereunder, by which the Telephone Company was released from its guarantee as to rates.

On January 20, 1908, the plaintiff filed an amended petition in which he alleged that the passage of the ordinance of February 4, 1904, was procured at the instance of the Telephone Company, and by and upon the fraudulent representations of that company as set out in the original petition. The allegation of fraud, in the original petition, had however been stricken therefrom, along with many other matters, held by the circuit judge to be irrelevant.

Demurrers were filed to the original petition, but no action was taken thereon at the time. The company answered in several paragraphs, in which it set up affirmatively, many of the facts above set forth, and relied upon the validity of the supplementary contract of 1904 as authorizing its abandonment of the old rates under its contract of 1901, and the substitution therefor of the new rates, which it alleged were reasonable for the service rendered.

Two telephone subscribers presented their intervening petition to become parties plaintiff in the action, complaining that they were being required to pay a rate in excess of that required by the original contract, and asked that they be allowed to recover on behalf of themselves and all other telephone users, the excessive rentals which the company had collected from the citizens, which they estimated at about $100,000.00. The reply attacked the validity of the ordinance and contract of

1904, on the ground that the city was without authority to release the company from performing its contract, or from paying the consideration which it had offered for its franchise.

Upon the hearing the chancellor carried the demurrer to the answer back and sustained it to the petition, and upon the plaintiff and the intervenors declining to further plead, the petition was dismissed. From that order the plaintiffs prosecute this appeal.

The chancellor struck out the charges of fraud upon the part of the city council in changing the contract, evidently upon the theory that the charges were not sufficiently specific to bring the case within the rule that allows that question to be raised.

In this we think he was correct.

In Henderson v. City of Lexington, 132 Ky., 406, 33 Ky. L. R., 703; 111 S. W., 322, we said:

''The motives of the council in closing this alley are also assailed, and the accusation is made that their action was influenced by a desire to assist the railroad companies that wanted the freer and safer use of Water street. But we will not stop to inquire into the motives that prompted the council in the enactment of the ordinance in question. The record discloses that the only purpose they had was to subserve the public good. There is no evidence whatever indicating improper motive. But, aside from this, when the exercise of authority by a city council is within its power, the motives that influenced it will not be inquired into, except in rare cases, where it is manifest that a flagrant wrong had been perpetrated upon the public, and valuable rights have been surrendered ostensibly for the public good, but really for the benefit of private individuals. And the exceptional conditions that would authorize the courts to interfere are not in any manner presented by this record.''

See, also, Slade v. City of Lexington, 121 S. W., 621.

Laying aside therefore the question of fraud, the controlling question of the case relates to the power of the general council of the city of Lexington to make the supplementary contract of February 1904, by which it released the Telephone Company from its guarantee as to rates. Appellant insists that a municipality, after advertising and selling a franchise, as is required by section 164 of the Constitution, cannot release the purchaser from the performance of the terms of its bid, or

enlarge the franchise in any manner, without selling the additional privilege as required by that section.

Section 164 of the Constitution reads as follows:

"No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway."

In short, the effect of this contention upon the part of appellant is, that the public acquired a vested right in the prices named in the franchise, which could not be affected, altered, or modified by a future agreement between the city and the company. If this question be determined contrary to the contention of appellant, it becomes unnecessary to consider the many other questions discussed in the briefs, since they all fall with it.

Section 3061 of the Kentucky Statutes, which is a part of the charter of cities of the second class, to which Lexington belongs, provides as follows:

"The general council shall have the power to pass, modify, amend and repeal all ordinances necessary and proper for carrying into effect the powers granted by this Act."

Abbott in his work on Municipal Corporations, section 548, says:

"The power to legislate carries with it by implication, except as specifically prohibited or eliminated by charter or constitutional provisions, the right to repeal or amend such legislation by subsequent action of the same body."

In McQuillin on Municipal Corporations, Vol. 3, section 1272, the rule is laid down as follows:

"By consent a municipality may modify a contract. Obviously, the municipality cannot, without the consent of the other party to the contract, modify it. The power to modify a contract on behalf of a municipality generally is vested in the officer or body authorized to make the contract. Unauthorized modifications of contracts by officers without authority will not bind the city. Generally, the common council has power, with the consent of the other party, to modify a municipal contract pre-

viously entered into, so as to bind the city. Evidence of a modification need not consist of express acts. The consent of the corporation to modify a contract may be inferred or implied from acts on its part relating to the performance of a contract after it formed the conclusion.''

See, also, sections 198 and 199 of the same work.

Furthermore, the question is not an open one in this State, since it has been squarely decided, in favor of the power, in the three cases of Cumberland Telephone & Telegraph Co. v. City of Hickman, 129 Ky., 229; Louisville Home Telephone Co. v. City of Louisville, 130 Ky., 626, and Gathright v. H. M. Byllesby & Company, 154 Ky., 135.

In the first case, the city council of Hickman, by a new contract, waived the condition in a telephone franchise; and this court sustained the new contract.

· In the second case, the Home Telephone Company's franchise required it to pay annually to the city the sum of one dollar for each telephone or instrument in excess of six thousand, and by agreement between the Telephone Company and the city of Louisville, the provision above referred to was eliminated, and the telephone rates were materially increased. It was there contended that the city and the Telephone Company could not, even by agreement, waive a contract in the franchise which had been made for the benefit of the citizens. This court, however, overruled that contention, and held that it was competent for the Telephone Company and the city to agree to the enactment of an ordinance relieving the Telephone Company of the obligation in its original franchise.

And, in the Gathright case, recently decided, the same question was again presented and was again decided the same way. In that case the charter of the Kentucky Electric Company prohibited it from selling out to any competitor, and by a contract authorized by an ordinance of the city of Louisville, the city agreed to waive that prohibition. It was contended there, as here, that the prohibition was for the benefit of the consumers of electricity, in which they had a vested right, and that the city could not, by contract, waive this vested right. In answer to that argument, we said:

''Did the City Council have the power to waive section six of the charter of the Kentucky Electric Company, which prohibited it from selling out to the Louis-

ville Lighting Company, or any other competitor? If this were a case of first impression in this jurisdiction, we might be inclined to give great weight to this contention. The question, however, was put at rest, so far as this court is concerned, by the decision in Louisville Home Telephone Co. v. City of Louisville, 130 Ky., 626. In that case the Home Telephone Company's franchise required it to pay annually to the city the sum of one dollar for every telephone or instrument in excess of 6,000. By agreement between the Telephone Company and the city of Louisville, a new franchise was offered for sale from which the provision above referred to was eliminated, and the telephone rates were materially increased. It was contended that the city and the Telephone Company could not, even by agreement, waive a contract in the franchise which has been made for the benefit of the citizens."

This court, however, overruled that contention, and held that it was competent for the Telephone Company and the city to agree to the enactment of an ordinance relieving the Telephone Company of the obligation in its original franchise.

To the same effect, see Arnold v. Pawtucket, 21 R. I., 15; Oliff v. City of Shreveport, 52 La. Ann., 1203; City of Philadelphia v. Bowman, 175 Pa., 91.

This is not a case where the municipality is undertaking to change the provisions of a contract against the will of the other contracting party. In cases of that character it is universally held that the contract cannot be changed, since to do so would impair its obligation. Many of the cases relied upon by appellant belong to this latter class, and have no application to the question before us, where the contract was changed by agreement between the contracting parties. Instead of agreeing to the change, the city of Lexington could have required the Telephone Company to carry out the original contract notwithstanding it became burdensome to the Telephone Company by reason of subsequent developments. Louisville Home Telephone Co. v. City of Louisville, 149 Ky., 234. And, so long as it was in force, any citizen had the same right. Cumberland Telephone & Telegraph Co. v. City of Hickman, 129 Ky., 220. But where both parties to the contract agree to its modification, there is a new contract, which either the city or the citizen may enforce. Whatever the contract may be, either the city or the citizen can compel its execution.

That, however, is quite a different proposition from that contended for by appellant—that the parties cannot, even by agreement, change the contract.

Appellant relies principally upon the decision of this court in Louisville & Taylorsville Turnpike Road Co. v. Boss, 19 Ky. L. R., 1959, 44 S. W., 981, in support of its contention that he had a vested right in the original service charges.

So much of the opinion as apparently holds that a citizen has a vested right in the toll-rates of a turnpike company after they have been fixed by the act of the Legislature creating the corporation, and that they cannot be subsequently changed by the Legislature with the consent of the corporation, was not necessary for the decision of that case, is not sustained by authority, and is overruled. The decision in the Boss case might well have been rested alone upon the failure of the act of 1880 to repeal the previous acts of the Legislature in so far as they protected the inhabitants of Jeffersontown.

It was within the power of the city of Lexington and the Telephone Company to modify the contract between them.

Judgment affirmed.

The whole court sitting; Judge Carroll dissenting.

DISSENTING OPINION BY JUDGE CARROLL.

The opinion in this case holds that when the people of a city, through their agents, the common council, have entered into a valid and binding contract with a public service corporation by which it obligates itself to furnish to the people, for the term of years specified in the contract, the service contemplated, at a specified sum, that thereafter and during the life of the contract the common council and the public service corporation, without asking the advice or consent of the people affected, may abrogate provisions of the franchise contract beneficial to the people of the city; that they may enter into a new contract by which the public service corporation, to its own advantage and to the detriment of the people of the city, may charge much higher rates for services than it was allowed to charge under its original contract.

To this proposition I do not agree.

The facts of this case, as stated in the opinion, furnish a striking illustration of the reasons why the doctrine announced in the opinion should not prevail.

Under the franchise contract the telephone company obligated itself to furnish to the people of Lexington for a term of years business telephones at $30 per annum and residence telephones at $18 per annum. Under the new contract made between the council and the telephone company the telephone company was allowed to charge and exact without limitation any fee it might fix and in fact did charge for business telephones $42 and for residence telephones $24. For this large increase in rates which may be further increased the company did nothing it was not required to do under the franchise contract. It surrendered no right or privilege. The right to levy this excess rate on the people of Lexington was a bonus or gift presented to the telephone company by the council without any consideration of any kind or character. The only gainer by this transaction was the company, the only loser the people.

It is a matter of vital concern to the people of a city that when public service corporations have entered into a binding contract in the manner provided in the Constitution and laws of the State, that they should be required to live up to it. It is a matter of vital concern to the people of a city that a public service corporation should not be allowed by a subsequent arrangement made between it and a municipal body to relieve itself of the burden it assumed in its original contract and put upon the people charges that they were not required to bear by the original contract. It is a matter of vital concern to the people of cities that valuable franchise rights should only be secured by public service corporations in the manner pointed out in the Constitution. It is a matter of vital concern to the people of cities that valuable contracts for a fixed time should not be subjected to alteration by every city council that may see proper to change them at the instance of and for the benefit of the public service corporation affected.

If the method authorized by this opinion is to prevail, then any public service corporation can secure from the council, in the manner pointed out in the Constitution, a valid and valuable franchise contract, beneficial to the people of the city, and thereafter, whenever it can procure a council favorable to its interest, make a new contract, putting on the people of the city heavier burdens than the old contract imposed.

As a further expression of my views, I cannot do better, under the limited time at my disposal, than here

incorporate so much of my dissenting opinion in the case of the Louisville Home Telephone Co. v. City of Louisville, 130 Ky., 611, as seems pertinent. In that case the question here presented was involved, and I said:

"My position is that municipal boards occupy a position of trust; that they are agents and servants of the people of the city, and must perform their duties with fidelity to the welfare and interest of the people they represent for the time being; that their powers are delegated and limited; that although they may enter into contracts and, in certain states of case, cancel or modify them for a valuable and sufficient consideration, or in cases where a mutual mistake was made, or when it is for the best interest of the city, yet they cannot modify or cancel to the detriment of the people, whose agents they are, a beneficial or advantageous contract, made with an individual or corporation, solely for the advantage of such person or corporation. To sanction a power like this would be giving to municipal boards authority not granted to any other agent or trustee; and when it is attempted, the courts have the same power to interfere and control as they do in any case where the principal or agent is exceeding his powers. And I rest my argument on the right of the court to interpose upon the ground that the council, in the enactment of so much of the ordinance as exonerated the Home Telephone Co. from its liability and obligation, exceeded its power as much, although in a somewhat different way, as was attempted by the council that undertook to relieve the city railway company from the payment of taxes, but was prevented by this court, in the case of Louisville v. Louisville Railway Co., 111 Ky., 1.

"When the bid for the franchise offered for sale under the ordinance of 1900 was accepted by the council, a valid and binding contract was entered into between the city and the Home Telephone Co. for a term of 20 years. This contract neither party, under the facts presented, could modify or cancel without the consent of the other. While admitting the correctness of this proposition, it is nevertheless confidently asserted that, as any kind of a contract may be altered or annulled by the consent of the contracting parties, so may a contract entered into by and with a municipality. Therefore, the argument is made that, as the council and the other contracting party have consented to a cancellation of the contract, the courts have no authority to inter-

fere; that the matter is entirely within the power and discretion of the council and the council is to judge unrestrained of the necessity or reason for its cancellation and its acts are final and conclusive. * * *

"I have made diligent search, but without success, to find any authority supporting the view that a city council without any valuable consideration may surrender or give away valuable property rights secured to the city under a fair contract, entered into by the contracting parties with full knowledge of existing circumstances, and the reciprocal rights and duties assumed. City Councils are not invested with supreme power. They are not altogether above judicial control. They have large powers and extensive discretion, but these powers, and the discretion incident thereto, are delegated. They must be exercised within statutory limits, and when these limits are exceeded their action may be reviewed by the courts. That they did exceed them in this case, I have no doubt. The inhabitants of a city, although the principals, and indeed the corporation itself, are necessarily obligated to transact their business through agents appointed or selected for that purpose. And to say that these agents may cancel a contract made between the city and an individual, to the end that the individual may be benefitted by the cancellation, and the people of the city damaged by it, seems to me to be unsound in principle, and entirely beyond the scope of the authority of these municipal agents. In this case the city will secure no consideration for its agreement to relieve the Home Telephone Co. from its contract. * * *

"It, therefore, seems plain that, if the council can cancel this contract, it has the power to cancel any contract that might be made, by a person or corporation, with the city upon any subject, however injurious to the city and the people the annulment might be. This would result, if allowable, in permitting municipal boards to destroy any advantageous contract the city might make upon the request of the other contracting party who desired to free himself from the burden or liability assumed when the contract was entered into. It would further result in permitting these boards to grant a gratuity, in the form of exonerations from assumed liabilities, to persons who had contracts with the city. If in and as part of the ordinance offering for sale a new franchise, the city council has the authority to pro-

vide that the obligations assumed under the old ordinance shall be extinguished, it would seem to follow that this result could, with as much force of reason and propriety, be arrived at, by simply adopting an ordinance striking from the old ordinance the features thereof objectionable to the Home Telephone Company. The effect would be precisely the same. If one can be done, I see no reason why the other may not. But I doubt if the question was presented in this form if the majority of the court would have reached the conclusion that it was competent for the council to thus take away from the city, and the people of the city, valuable rights secured to them under a valuable and enforcible contract, or be willing to lay down a rule that would encourage persons to enter into a contract with a city to perform for a consideration some beneficial public service, with the hope and expectation that a more accommodating council would relieve them from the onerous features of a contract that a less agreeable body had exacted.''

It is true that the opinion of the court in this case adopts the views expressed in the Louisville Home Telephone Company case in which I dissented, and the views expressed in the subsequent case of Gathright v. H. M. Byllesby & Co., 154 Ky., 135, in the decision of which I took no part. But it goes an important step further than either of these cases. In the Louisville Home Telephone Company case the council required the telephone company to go through the form of buying a franchise before it could relieve itself of the obligations imposed by its first franchise contract. In the Gathright case it was made to appear that the change in the contract made by the council would be beneficial to the people of the city in giving them better service at lower rates than they received under the old contract, but this case is lacking in either of these partially redeeming features. In this case the council boldly undertook by an ordinance to relieve the telephone company of its obligations to the people, and made a new contract with the telephone company that did not require it to furnish to the people any better service than it was obliged to do under its franchise contract, and yet allowed it to charge a much larger service fee. In short, the court holds that a council may at any time by an ordinance abrogate a contract and give to a public service corporation anything it wants without any regard to whether the people af-

fected will be benefitted or not. This opinion removes the last restraint imposed by the Constitution for the protection of the people and leaves conditions precisely as they were before its enactment.

The case of Cumberland Telephone & Telegraph Co. v. City of Hickman, 129 Ky., 220, is also cited as authority for the opinion, but I do not think the principle laid down finds any support in that case. In that case a franchise contract was made with the telephone company providing "that the rate charged each subscriber within the city should not exceed $2.50 per month." It was also provided that work to install the plant should be begun within six months after the passage of the ordinance. The owners of the franchise were about to let it lapse by their failure to begin work upon the plant within the time specified, and they requested the city council to grant them an extension. This the city council did, but on condition "that the maximum charged to subscribers to the system in the city should not exceed $1.50 per month for residences, $2.50 for business houses, and where one subscriber had a phone in his residence and one in his business house also the maximum charge for the two should not exceed $3.50 per month.

It will be observed that the only change made in the franchise contract in this case was in giving the telephone company an extension of time in which to begin work, and for this small favor the council required the telephone company to agree to a schedule of prices more favorable to the people of the city than the franchise contract was. In sustaining the validity of this action of the council, we said:

"If the ordinance granted any additional privilege in the streets and public places of the city, there would be irresistible force in appellant's contention here; or, even if there was some material change in the terms of the grant, so as that the city was or might have been prejudiced by the fact, a very grave question would arise whether such an ordinance was not in effect the granting of a franchise without a sale. But we do not find such to be the case here. The grantee had agreed to certain conditions as part consideration for this grant. One of them, the rate of tolls, was of particular interest to the public; in other words, the city. The other condition was as to the time within which work on the plant was to be begun. The latter was not of so

much importance to the city, except as a kind of security that the bid was in good faith. It was a condition which the city might have been justified in not exacting the penalty for its breach, if the delay had not been material. Still it was a matter of importance to the grantee, as it weakened his hold upon his franchise. We think it was competent for the city to waive the forfeiture of the franchise because the work had not been begun within six months, in consideration of a reduction of the rates by the owner of the franchise. There was a sufficient consideration moving to the city to support its waiver of the forfeiture; likewise a sufficient consideration moving to the grantee of the franchise to support his agreement to charge patrons within the city, and for whose benefit and welfare the contract had been entered into, a less rate than was originally agreed upon. In doing this, the city granted no new or different right in the use of its streets nor did it abate any of the original consideration. On the contrary, it gave only what it had originally agreed to grant, and got in exchange a better consideration. What it had given up was a right to claim a forfeiture—the giving up of which is not the granting of a franchise.''

Thus it will be seen that the slight alteration in this contract was distinctly upheld upon the ground that it was beneficial to the people of the city. There is no intimation by the court in this case that a city council may change a franchise contract so as to impose heavier burdens on the people of a city or so as to give a public service corporation benefits that it did not have under its original contract.