## Central Kentucky Natural Gas Co. v. City of Lexington et al.

### Same v. Wright.
(Decided June 7, 1935.)

(As Extended on Denial of Rehearing Sept. 27, 1935.)

362

D. L. HAZELRIGG and HENRY T. DUNCAN for appellant.

W. L. WALLACE and J. PELHAM JOHNSTON for appellee City of Lexington.

LON B. ROGERS and D. C. HUNTER for appellee J. M. Wright.

OPINION OF THE COURT BY JUDGE STITES—Reversing.

This is an appeal from a judgment of the Fayette circuit court, sitting in equity, in a proceeding under the Declaratory Judgment Act (Civil Code Prac. sec. 639a-1 et seq.).

A more detailed history of the facts helpful to an understanding of the present controversy may be found in the opinions of Central Kentucky Natural Gas Co. v. Railroad Commission (D. C.) 60 F. (2d) 137, and Central Kentucky Natural Gas Co. v. Railroad Commission, 290 U. S. 264, 54 S. Ct. 154, 78 L. Ed. 307. The old franchise of the appellant gas company expired in 1925. No new franchise was offered for sale by the city, and the gas company gave notice that service would be discontinued upon the expiration of the then existing franchise contract. Thereupon, the city obtained a mandatory injunction from the Fayette circuit court requiring the continuance of service pending further negotiations for the sale of a new franchise. This injunction was continued in force until after a new franchise, effective February 25, 1927, was agreed on and purchased by the gas company. The new franchise

did not fix the rates to be charged other than that they should be reasonable. It provided, however, that if the rates promulgated by the gas company were deemed excessive, the city might appeal to the Railroad Commission. The city did appeal to the Railroad Commission, and, after lengthy hearings, a rate was fixed by the Railroad Commission and was promptly enjoined from operation by the United States courts. Upon final hearing, the commission was directed to fix a rate yielding a more reasonable return to the gas company.

Pending the decision of these cases a sum of money in excess of a million dollars has been impounded, representing the difference between an admittedly reasonable charge by the appellant for furnishing gas to consumers in Lexington, and the charge made pendente lite for a period of nine years. A part of the fund is held by a receiver for the Fayette circuit court, and the remainder by a receiver for the Railroad Commission. After the decision by the Supreme Court of the United States, holding that the rate determined by the Railroad Commission was confiscatory and that the proceeding should be remanded to the Railroad Commission for the fixing of a proper rate, the city and the gas company undertook to compromise their differences (1) by agreeing upon a rate for the future, and (2) by providing for a distribution of the impounded funds. The terms of the agreement were embodied in a resolution (hereinafter called Resolution 74) passed by the board of commissioners and accepted by the gas company.[1]

[1]The pertinent part of Resolution 74 provides:

"Second: That all money now impounded under orders of said courts and in the proceedings before the railroad commission shall, with the consent of said court, or courts, or commission, be made available and subject to the check of the company, and by it distributed as follows:

"[1] To the consumers, who paid in, at the rate of five cents per thousand cubic feet on all gas sold since December 1st, 1927.

"[2] To the company the remaining funds, said distribution of said funds shall commence within thirty days from the effective date of said amendatory ordinance and be completed as soon as it is practically possible.

"The company shall pay:

"[a] All cost of distribution. * * *

"Fourth: Appropriate agreed orders shall be entered in said court or upon said commission, settling and dismissing said proceeding in conformity to these terms and conditions. * * *"

Pursuant to the agreement contained in the resolution, the board of commissioners passed Ordinance 271, amending the existing franchise ordinance and putting into effect the agreed new schedule of rates for the future. It was erroneously thought by numerous voters that Ordinance 271 was subject to a referendum (Union Light, Heat & Power Co. v. City of Covington, 246 Ky. 663, 55 S. W. [2d] 667), and a petition for a referendum was filed against it. Thereupon, the board of commissioners repealed both Ordinance 271 and Resolution 74. Complaining of this, the gas company filed this suit against the city for a declaration of its rights in the premises and for a determination of the validity of Resolution 74 and Ordinance 271.

Another suit filed by appellee Wright as a consumer, seeking to enjoin the collection of the rates prescribed in Ordinance 271, was consolidated with the declaratory judgment proceeding, and both cases are before us on this appeal.

Numerous objections to the validity of Resolution 74 were made by the city and by appellee Wright. The chancellor, in a thorough and exhaustive opinion, demolished every objection raised against Resolution 74 and Ordinance 271, and we will not prolong this opinion with a reconsideration of those questions. The court, however, went a step further and held Resolution 74 invalid in its entirety because (1) section 2 of the resoluction undertook to distribute, without the approval of the court, the fund in which it held the consumers had a vested right; (2) S. B. Featherstone, who was a party plaintiff on behalf of himself and all other consumers, both in the proceeding in the Fayette circuit court and in the proceeding before the Railroad Commission, had not agreed to Resolution 74; and (3) the city was without power to agree on a distribution of the impounded funds and could only agree on a rate, after which the duty would devolve on the court and the Railroad Commission to distribute the fund in accordance with the rate fixed. The chancellor admitted in his opinion that if the city agreed with the gas company on a rate covering the period of the impoundment, there was nothing left for the court or Railroad Commission to do but distribute the funds in accordance with the agreed rate, in the absence of a charge of fraud or mistake. The record here indicates that both

the gas company and the commissioners, who voted in favor of Resolution 74, were acting in what they conceived to be the best interest of all concerned, in the utmost good faith. Neither fraud nor mistake is presented. Lutes v. Fayette Home Tel. Co., 155 Ky. 555, 160 S. W. 179. At the time when Resolution 74 was passed, the rate theretofore fixed by the Railroad Commission was a nullity, under the mandate of the Supreme Court of the United States. The city and gas company, therefore, were as free to agree upon the rates to be charged under the franchise contract as they were before the void finding of the Railroad Commission was promulgated. The consent of the court or commission required in the resolution was purely a formal consent to the method of distribution through the agency of the gas company. This is demonstrated by the provision of section 4 of the resolution, providing for the entry of necessary agreed orders. There was no reason requiring the consent of the court or commission as to the amounts distributed therein.

The point for our consideration, therefore, may be narrowed down to a determination of whether or not section 2 of Resolution 74 in effect, if not in fact, fixed a rate. If it did, we are not concerned with the policy or wisdom of the ordinance. Nor was it necessary that Featherstone should be a party to the agreement. In re Engelhard & Sons Co., 231 U. S. 646, 648, 34 S. Ct. 258, 58 L. Ed. 416. The matter was one entirely between the gas company and the city. Johnson County Gas Co. v. Stafford, 198 Ky. 208, 248 S. W. 515; Lutes v. Fayette Home Tel. Co., 155 Ky. 555, 160 S. W. 179; Russell v. Kentucky Utilities Co., 231 Ky. 820, 22 S. W. (2d) 289, 66 A. L. R. 1238.

The chancellor took the view that the funds impounded in the Fayette circuit court were to be treated as an injunction bond, and that unless the gas company could show some damage, then the entire fund should be returned to the consumers who paid it in. This overlooks the fact that the mandatory injunction was granted in the interest of the public, and not because of any wrong on the part of the gas company. A condition of granting the injunction necessarily was that the gas company, whose property was thus taken for a public purpose, should receive fair compensation for the use of that property, to be paid out of the impounded fund. There is nothing inconsistent in granting the in-

junction and at the same time making a payment to the gas company, if the facts justify it. Consumers who paid money into the impounded fund, whether in the Fayette circuit court or before the Railroad Commission, did so with knowledge that if the full amount paid were required to pay appellant a fair return on its investment, there would be no refund. If this were not so, there could have been no reason in requiring the payment. They had the further knowledge that the city had full power to agree upon a reasonable rate. Any right they might have in the fund was entirely contingent upon a finding by the court or by the Railroad Commission, or an agreement between the city and gas company, that a reasonable rate was something less than the rate fixed pendente lite. They had no "vested interest" after the payments were made.

It is apparent that Resolution 74 did in fact fix a reasonable rate for the period of impoundment. Under it, prior to December 1, 1927, a reasonable rate coincides with the charge made pending the suit. After December 1, 1927, it is 5 cents less than the rate pendente lite. No one asserts that this amounts to more than a fair return to the gas company on its investment.

No reason is apparent, and we have been pointed to none, why the city and gas company should be compelled to fix a rate covering the period of impoundment at so much per thousand cubic feet of gas and to employ a force of accountants, at the expense of consumers, to ascertain the ultimate refunds to be made. The city and the gas company certainly had the power to deal with the situation in a practical way, and so long as the result of their action was to agree upon a return for the gas company that was neither extortionate nor confiscatory, we can see no reason for objection to the method adopted. It strikes us as being the intelligent way to deal with the situation. Admittedly, the figure is to some extent arbitrary. Any compromise of rates must of necessity be arbitrary. It must exist at the point where the demand of one litigant ceases to be an irresistible force and the resistance of the other litigant is no longer an immovable object. So long as capital values remain uncertain or fluctuate, there must exist a margin between confiscation and extortion which represents the trading area for agreement. The rates fixed in Resolution 74 fall within this margin. Since the city and gas company have in effect agreed upon a

reasonable rate, it is the duty of the Fayette circuit court and of the Railroad Commission to enforce that agreement and to facilitate the distribution of the funds impounded.

Objection is made on the ground that Resolution 74 provides for the payment by the gas company of various costs, fees, and expenses. If the gas company was willing to make these payments out of the money coming to it, which was not more than a reasonable return to it, we do not see any legal objection to the arrangement. Certainly no consumer can complain. The gas company is not objecting, and, as a matter of fact, the payments provided for will, to a large extent, increase the net amount to be returned to the consumers and will reduce the already heavy expense to the taxpayers resulting from the protracted litigation.

It follows from what we have said that both Resolution 74 and Ordinance 271 enacted pursuant thereto are valid as contracts and could not be repealed as attempted, and that it is the plain duty of the public agencies concerned to lend every effort to bring this long-pending litigation to an end.

The argument, on behalf of appellee Wright, that the compromise agreement impairs the obligation of the original franchise contract and deprives him of his property without due process of law under the Federal Constitution (Amendment 14), is based entirely upon the premise that he had a vested interest in the method of fixing rates and in the funds impounded. We think it is clear that he did not.

The judgment is reversed for proceedings consistent herewith.

Whole court sitting.