## Russell et al. v. Kentucky Utilities Company et al.

(Decided December 3, 1929.)

EDGAR T. WASHBURN for appellants.

WHEELER & HUGHES, W. V. EATON and GORDON & LAURENT for appellees.

OPINION OF THE COURT BY COMMISSIONER STANLEY— Affirming.

This case involves the right of a municipality by resolution, accepted by a street railway company, to change the terms of a franchise and permit the substitution of motorbusses for electrically operated street cars. The appeal is presented from a judgment sustaining a demurrer and dismissing the petition of appellant, suing for himself and other citizens and taxpayers of the city of Paducah, against the city and appellee company, the owner of the franchise. No authority directly in point has been cited or found after extended research.

The franchise forming the basis of the action was not made a part of the petition. The case must therefore be decided upon the allegations of fact as to its provisions, coupled with the rule of strict construction of a pleading. As thus disclosed, it appears that a franchise was granted to the Paducah Railway Company (predecessor of appellee) on April 4, 1919, "to operate street cars on and over the streets of the City of Paducah," therein named and designated. The company was required to pay the cost of constructing the streets between and twelve inches on the outside of the rails. Appellant's brief contains quotations from, and references to, other requirements of the franchise, but they must be ignored, and the case heard on the record.

On June 21, 1927, there was regularly adopted by the city council and approved by the mayor a resolution, entitled: "A resolution granting the Paducah Railway Company the right to operate busses over certain streets of the City of Paducah, and modifying Section 10 of the franchise granted the Paducah Railway Company on the 4th day of April, 1910." Section 1 of this resolution provides that the company shall not be required to operate street cars on certain named streets "so long as busses are operated by" the company on named streets. Section 2 gives the right to the company to operate busses over certain streets with fixed termini. Section

3 declares that ''the operation of busses on the streets named in the last paragraph of the first section of this resolution shall be a compliance with Section 10 of the franchise granted by the City of Paducah to the Paducah Railway Company on April 4, 1919, and the operation of busses on said streets is hereby declared to be in lieu of the operation of street cars on'' certain named streets. Section 4 is as follows:

''That the adoption of the resolution shall not be taken or construed as a surrender by the City of Paducah of any right it now has or may hereinafter have to license or regulate persons or companies transporting passengers by buses on the streets of Paducah.''

Section 5 provided the resolution should take effect from its passage and approval.

It is charged in the petition that the ''routes mapped out in said resolution'' were formerly the routes on which'' street cars were operated under the franchise; that the city permitted the company to remove its rails from certain streets and after removal required construction of the streets at the expense of the property owners, and, in turn, allowed the company to operate busses in lieu of street cars over those streets, resulting in damage to them and loss to the taxpayers.

The plaintiff averred that the resolution attempted to confer a franchise or an extraordinary or privileged right of a permanent nature to be exercised in a way entirely different from the provisions of the original franchise; that it had the effect of giving to the company a franchise to operate motor vehicles over the streets of the city for the transportation of passengers for a fixed time in conjunction with the rights specified in the original franchise; and that it was done without complying with the provisions of sections 163 and 164 of the Constitution, and in violation of the rights of plaintiff and all other taxpayers of the city. It is further alleged that the resolution was not adopted in consideration of the surrender of any rights held by the company under its franchise nor for the mutual benefit of the company and the taxpayers, but granted and conferred additional privileges and rights upon the company to the material damage of the taxpayers and owners of property abutting on the streets where the street car rails were for-

merly located. The petition and amendment, in addition to asking general, equitable relief, prayed that the resolution be declared null and void, and that it be adjudged that the company took no right under it, and had no right to operate busses on and over the streets of the city, and prayed for damages in the sum of $1,950 for injury done the streets of the city since those operations began.

As suggested, in the absence from the record of the original franchise, we must predicate the opinion on the mere statement that it granted the power to appellee's predecessor to operate street cars on and over the named streets. It does not appear, therefore, that the particular mode of operation was provided, nor that such operation was confined to any special motive power. It might be assumed also that there was a reservation in that franchise which authorized the resolution of June 21, 1927, and its acceptance by the holder of the franchise. Baker v. Combs, 194 Ky. 260, 239 S. W. 56.

While the rule is elementary that public grants are to be strictly construed, still, where the grant contains no words either defining or limiting the powers which the franchise holder may exercise, it has by implication all such powers as are reasonably necessary to enable it to accomplish the purposes and objects of its creation. Is it any less logical to say that the grantor and the grantee of the privilege may mutually agree upon the method or manner by which the purpose and object of the franchise may be accomplished?

For ready reference we quote section 164 of the Constitution, as it is our standard of measurement in this case:

"No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway."

It will be observed that, in vesting municipalities with the power to grant public utility franchises, there

was no restriction as to the terms except duration of time. So the particular methods of exercising privileges thus granted, and reservations, stipulations, and the like desired by and agreeable to the municipality and the purchaser of the franchise, are left to their discretion. If at first the parties might have made such an agreement, may they not subsequently amend that agreement so long as a new franchise is not created? The right of contracting parties to change by agreement provisions of public service franchises has been before this court upon several occasions, and section 164 of the Constitution has been construed in its relation to that issue. It has uniformly been held that the right to change the terms of the franchise exists, although there may arise cases where the peculiar amendments are interdicted by the constitutional limitations on the powers vested in municipalities.

In Johnson County Gas Co. v. Stafford, 198 Ky. 208, 248 S. W. 515, 517, there was involved the validity of an ordinance accepted by the owner of the franchise which granted an increase in the gas rates in the city of Paintsville. It was there contended also that the change was proscribed by section 164 of the Constitution. The argument was thus answered in the opinion:

"But an analysis of the language used in that section will readily disclose the fallacy of this view. The inhibition in the first place is against the granting of any franchise or privilege or the making of any contract in reference thereto for a term exceeding 20 years, but in the succeeding sentence, wherein provision is made for the advertisement and public sale, it is only said that such franchise or privilege—not contract or amendatory contract—'shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder.' The inhibition is against the granting of a franchise or privilege or making a contract for a term exceeding 20 years, and further against granting a franchise or privilege without advertisement or public sale, but there is no inhibition expressed or implied against entering into a contract or amendatory contract except that the same shall not be for a term exceeding 20 years."

That case followed Lutes v. Fayette Home Telephone Co., 155 Ky. 555, 160 S. W. 179, involving an agreed change in telephone rates, in which case it was held that a citizen of a municipality has no vested right in the scale of charges agreed upon as that is wholly a matter of contract between the legislative body of the city and the public service corporation. The subject is there fully treated, and other opinions to the same effect are therein cited and discussed, and they need not be here directly referred to.

The Street Railway Company in Covington was authorized by an ordinance to change its tracks from certain streets named in its franchise to others not therein designated, but extending to the same destination. Some time after that was done a taxpayer sought to have the tracks removed from the new location on the ground that the ordinance granting that right contravened section 164 of the Constitution. However, in Woodall v. South Covington & Cincinnati Street Railway Co., 137 Ky. 512, 124 S. W. 843, 845, the validity of that ordinance and its acceptance was sustained. Said the court:

"The purpose of the arrangement between the city and the street railway company was not to grant an additional franchise but simply to relocate the tracks of the street car company so as to be better for the city and better for the traveling public. . .

"Section 164 of the Constitution was not intended to take away from the municipalities of the state power to make changes like this required by the increased population of the city or altered conditions. It was a mere modification in a detail of the execution of an existing franchise analogous to the removal of tracks from one side of a street to another. Section 164 of the Constitution relates to the granting of franchises. It was not intended to tie the hands of the city authorities as to the mere details of executing a franchise already granted. Both parties here acted in perfect good faith. There was no purpose to grant any new franchise to the street railway company. The only purpose was to adjust an old franchise to the present needs. Of course, section 164 of the Constitution must not be evaded. If it was made to appear that an arrangement like this had been made in evasion of the constitutional provision, or to accomplish by indirection the grant-

ing of a franchise, we should look through the mere form at the substance, and declare the transaction void; but, where nothing of this sort appears, the city council may obtain by contract a modification of existing franchises in the mere details of their execution when the interest of the city so requires. In such cases the validity of the transaction will depend on whether the real purpose of the parties was to grant a franchise or simply to obtain a modification in the exercise of an existing franchise.''

The purpose and object of the franchise involved in this case was to provide for the rapid and convenient transportation of the public. That was the basic right granted. The motive power or method of propulsion of the vehicle is subordinate or subsidiary. It is but the means of making the franchise effective. Is the substitution of cars running on rubber tires, free from limitations of steel rails and trolley wires, and propelled by internal combustion engines, in place of cars with metal wheels without tires, running on fixed rails, and propelled by electric motors supplied with power through overhead wires, such a radical departure from the purposes and objects and terms of the original franchise as to preclude the change? If busses be used for the transportation of passengers, there is no additional servitude on the streets or obstructions to the free and safe use of the streets by other vehicles. On the contrary, the streets are relieved of trolley poles and wires and the imbedded rails, more or less dangerous. It can hardly be said that the operation of the busses is more dangerous or obstructive than the operation of electric street cars on the thoroughfares. The problem is one of distinction between the essence in which the permanent value lies—the use of streets for transportation of passengers for hire—and the incidents of that franchisal right which are subject to change by agreement, viz., the facilities to be used.

The case is analogous to the line of cases rendered several years ago during the transition from horse cars. Electric street railways are nothing but an improvement upon street railways propelled by horses or mules. They occupy the streets and highways with exactly the same rights as were enjoyed by street cars before electric propulsion was resorted to. To meet the demands of modern life, the courts held the right of substitution existed, unless the franchise clearly and explicitly confined the

motive power to horses or to some mechanical means. Thus in Hudson River Tel. Co. v. Watervliet Turnpike & R. Co., 135 N. Y. 393, 32 N. E. 148, 17 L. R. A. 674, 31 Am. St. Rep. 838, it was held that electricity may be used as the motive power of street railway under a statute authorizing the use of "horse, animal or other powers . . . except the force of steam," although at the time the act was passed such railways were run exclusively by animal power as the method of operating them by electricity had not been invented.

In Howley v. Central Valley R. Co., 213 Pa. 36, 62 A. 109, 112, 2 L. R. A. (N. S.) 138, 5 Ann. Cas. 51, it was held that electricity could be used by a railroad company whose charter was silent on the subject of motive power. This conclusion was reached in that case:

> "Hence, under the general grant of power to maintain and operate a street railway, it would seem to be clear that a corporation formed under this statute takes, by necessary and unavoidable implication, a right to use any force in the propulsion of its cars that may be fit and appropriate to that end, and which does not prevent that part of the public which desires to use the street according to other customary methods from having the free and safe use thereof."

The notes to that case as reported in the Lawyer's Reports Annotated show that the courts generally recognize the right to substitute electricity as a means of propulsion, in the absence of a definite restriction in charters or franchises.

In the comparatively recent case of Denny v. Brady, (Ind. Supp.) 163 N. E. 489, 490, a contest arose between the receiver for the Street Railway Company of Muncie, Ind., and certain operators of motorbusses on the streets of that city. It was contended that the company's charter authorizing it to operate street railways was not sufficiently comprehensive to include the operation of motorbusses. It was held that the street railway corporation had authority to operate motor vehicles for the transportation of passengers for hire without amending its articles of incorporation. Under a statute construing powers granted to street railway corporations to include that privilege, the court declared: "Such added power does not change or affect the fundamental purpose of the

corporation, but it is auxiliary thereto." Why then may not the parties to this franchise-contract agree upon an auxiliary purpose in effecting the fundamental and primary purpose, to wit, the safe, convenient, and economical transportation of the public? In the opinion of many people the use of modern motorbusses is preferred on short trips, and it would appear, as has been suggested, their use in lieu of street electric cars, with accompanying tracks, poles, and wires, is a lesser servitude and burden on the public thoroughfares. The primary consideration is the public interest. Accordingly it is stated in 25 R. C. L. 1144:

"A condition or restriction placed on a street railway company in its franchise may be removed by the municipality when, in its discretion, it concludes that no substantial benefit is derived by the public from its enforcement. It is a question of what is best for the public welfare and the determination of the question is peculiarly one for the city council, and the fact that the street car company is substantially benefited by a change in the franchise releasing it from a restriction does not affect the power of the city council to make the change in a fair exercise of the discretion lodged in that body."

In People's Transit Co. v. Louisville Railway Co., 220 Ky. 728, 295 S. W. 1055, the court indicated its view that the framers of the Constitution, by sections 163 and 164, meant to apply their provisions and requirements to the result sought to be accomplished and the service authorized to be rendered by public utilities rather than the means of performance or methods of accomplishment or the character of facilities used. So it was held in that case that they comprehended the transportation of passengers between fixed termini by motor vehicles, and an ordinance granting the privilege from year to year to operate such a bus line was, in the suit of the competing street railway company, held invalid. That case does not support appellant's argument. as he contends, for the appellee already owns a franchise from the city of Paducah for that same purpose, to wit, the transportation of the public for hire between fixed termini. The resolution being assailed merely changes the method of accomplishing the results by introducing new facilities. The amendatory ordinance does not attempt to extend any right or privilege beyond the life of the franchise. It

explicitly declares that the city surrenders no right which it has or may have to license or regulate other companies transporting passengers by busses.

The court concludes that the contract thus entered into by the city and appellee as an amendment to the original agreement is not at variance with the constitutional grants, and is therefore valid.

As to the allegation that the municipal authorities surrendered without consideration the right to have the appellee bear part of the burden of constructing the streets, and in so relieving it added that expense to the abutting property holders—which it is alleged amounted to $20,000—it may be said, among other reasons which might be suggested, that the appellant did not state that he was the owner of any abutting property so affected or show that he was damaged in this respect. Consequently, having no interest in the subject-matter, he was without power to raise the question or prosecute the suit. It is only when the party is situated similarly to the numerous ones for the benefit of whom he sues that he can maintain the action. Civil Code of Practice, sec. 25; Overton v. Overton, 123 Ky. 311, 96 S. W. 469, 29 Ky. Law Rep. 736.

The judgment of the lower court is therefore affirmed.

Whole court sitting.