## Scott v. Cincinnati, N. & C. Ry. Co. et al.

(Decided May 7, 1937.)

384

LORIMER W. SCOTT for appellant.

MATT HEROLD for appellee Cincinnati, N. & C. Ry. Co.

LOUIS REUSCHER for appellee City of Newport.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Prior to September, 1932, the City of Newport had vested the Cincinnati, Newport & Covington (Street) Railway Company with a franchise privilege to operate upon the streets of the city a street railway system, equipped with electrically propelled street cars for the transportation of passengers. Perhaps, also (the record not being clear on that point), it had consented for the substitution of passenger busses on some of its streets, in lieu of electrically propelled street cars running upon fixed railway tracks. There arose a controversy between the railway company and the city over

certain regulatory features of the transportation operation—particularly (a) the alleged obligation on the part of the railway company to equip its transportation vehicles with two persons, and (b) the rate of fare from any part of the City of Newport across the Ohio river into the City of Cincinnati—and the railway company, in conformity with what it concluded were its rights, began to operate its transportation vehicles with only one man; and it also installed a transportation charge of 10 cents for trips across the Ohio river into the City of Cincinnati, Ohio, with a charge of 15 cents for a round trip. After such changes in operation, the city threatened to take legal steps to prevent them being carried into permanent effect because, as it contended, the railway company had no right, under its franchise, to make them without the consent of the city, which had not been given. At that juncture, the railway company filed an equity action in the United States District Court for the Eastern District of Kentucky to enjoin the city from taking any such threatened steps, by which its adopted changes would be interfered with. The court granted the injunction, followed by an appeal of the city to the United States Circuit Court of Appeals for the Sixth Circuit when the judgment was affirmed by that court. City of Covington v. Cincinnati, N. & C. R. Co., 71 F. (2d) 117.

The city was threatening to—and perhaps taking steps to—appeal the case to the United States Supreme Court, when it, through its proper officials, and the railway company, came to an agreement whereby the differences between the two, growing out of the matters to which we have referred, were compromised; and on April 14, 1936, the city commissioners passed an ordinance, designated as Ordinance No. 140, embodying the terms of the compromise agreement. They were: That the railway company could operate its passenger vehicles with only one man; that it might charge and collect a fare of 8 cents for each passenger transported from Newport into Cincinnati, Ohio, or four tickets for such transportation for 25 cents, with only half that amount for the transportation of school children to and from school. The city also consented, in that ordinance, that the transportation privilege granted by the franchise to the railroad company might be partially performed with the use of busses, and for the latter vehicles to be operated exclusively upon some of the

streets of the city. The ordinance also provided that it should not be binding until it was accepted in writing by the street railway company, which was done. As a citizen and taxpayer of the city, the appellant and plaintiff below, Lorimer W. Scott, then brought this declaratory judgment action against the city and the railway company, in the Campbell circuit court, for a declaration of rights, and he charged in his petition that Ordinance No. 140, supra, was invalid, and he sought the proper orders of the court to prevent its enforcement.

The alleged invalidating features of the ordinance, as set out in the petition, were and are: (1) That it violated sections 3059 of the 1936 revision of Carroll's Kentucky Statutes, which is a part of the charter of cities of the second class to which Newport belongs; (2) that the ordinance was in effect an amendment of the franchise under which defendant railway company was operating and it did not conform to the provisions of the statutes, supra; (3) that the regulatory provisions conferred by the ordinance were in violation of the requirements of section 164 of our Constitution and of the provisions of section 3068 of the same statutes; (4) that it also violated the provisions of section 3235dd-42 of the same statutes; and (5) that the provision requiring the ordinance to become effective from and after the acceptance of its terms by the railway company was unauthorized.

Defendants demurred to the petition and, without waiving it, filed answers setting up the facts to which we have referred, but in more detail. Plaintiff filed a demurrer thereto and, without waiving it, filed a reply. The cause was then submitted upon the pleadings, and the court sustained defendants' demurrer filed to the petition as amended and rendered judgment upholding the ordinance, in which it was said: "That said ordinance conforms to the requirements of the law in all other respects and is a valid enactment by the City of Newport." Plaintiff was granted an appeal to this court which he perfected by filing a transcript of the record with the clerk of this court. The grounds set forth in the petition are repeated in brief of plaintiff on this hearing, but evidently the action is a friendly one, filed in order to obtain the approval of the court of the compromise terms embodied in the ordinance, since the very nature of the grounds set forth, in view of our former

decisions upon the points raised, clearly indicate the absence of merit in any of them. But they were, no doubt, the only ones that plaintiff could urge as a basis for his, no doubt, friendly action.

The relevant provisions of section 3059, supra, of our Statutes, are similar to the provisions of section 51 of our Constitution, requiring a statute to relate to but one subject which shall be stated in the title, and forbidding the amendment of any statute by reference to its title only, and also requiring so much of a prior statute as is amended to be set out in full in the amendatory act. The statute prescribes the same requirements with reference to an ordinance passed by a city of the second class. But before the requirement may be invoked the attacked ordinance in this case (No. 140) must be construed as an amendatory one to some prior ordinance, for, if it is not so, then the section of the statutes, supra (3059), would not apply. The title to the ordinance, which is preceded by a number of "Whereases," says:

"An Ordinance providing for the adjustment of the controversies between the City of Newport, Kentucky, and The Cincinnati, Newport and Covington Railway Company, by agreeing upon the adjustment and regulation of the operations of street cars and buses upon the streets of the City of Newport, and the rates of fare to be charged for the term of seven (7) years."

In a number of prior cases we have held that the title of a statute, or of an ordinance under provisions such as are contained in section 51 of our Constitution and section 3059, supra, of our Statutes, was sufficient if the general terms employed in the title were broad enough to embrace the subject matter dealt with in the body of the enactment, and that the title need not contain details or minute specifications. The cases are so numerous to that effect that it would unduly lengthen this opinion to catalogue even the majority, much less all of them. We therefore deem it sufficient to refer to only the more recent ones of Gathright v. Byllesby & Co., 154 Ky. 106, 157 S. W. 45; Poggel v. Louisville Railway Co., 225 Ky. 784, 10 S. W. (2d) 305; Schoening v. Paducah Water Co., 230 Ky. 453, 19 S. W. (2d) 1073; Dowdy v. City of Covington, 237 Ky. 274; 35 S. W. (2d) 304, and Talbott, Auditor, etc., v. Laffoon, Governor,

257 Ky. 773, 79 S. W. (2d) 244. The inserted title to the attacked ordinance in this case is sufficiently broad in its terms to embrace every detail of the provisions contained in the body of the ordinance; and the dispositions of like contentions contained in the cited cases clearly demonstrate that this ground is without merit.

2. Ground (2) proceeds upon the theory that the prior franchise-granting ordinance, or ordinances, contained provisions in direct conflict with provisions granted by the attacked ordinance, and to that extent the latter ordinance was an amendatory one of the prior franchise granting ordinance or ordinances. In the first place, it is neither alleged nor proven that any such franchise ordinance or ordinances contained provisions contrary to the provisions agreed and consented to, as embodied in the attacked ordinance. But, if the fact were otherwise and it was made to so appear in this record, then it would not follow that the attacked ordinance was unauthorized, since such regulatory provisions may be changed or altered at any time by agreement of the parties, i. e., the governmental authority creating and granting the franchise, and the grantee thereof, as was expressly held in the Gathright Case and also in those of Lutes v. Fayette Home Telephone Co., 155 Ky. 555, 160 S. W. 179, and Johnson County Gas Co. v. Stafford, 198 Ky. 208, 248 S. W. 515. There is also therefore no merit in this ground.

3. The sections of the Constitution (164) and of the Statutes (3068) forming the basis for ground (3) prescribed that no franchise of the nature and kind held by defendant railway company shall be granted for a term longer than twenty years, and in no event may it be granted except to the highest and best bidder, at a sale therefor conducted according to law, none of which was observed in this case. But the trouble with that argument is that Ordinance No. 140 in this case did not purport to, nor did it in any wise, grant any franchise. The franchise under which the defendant railway company was then and had theretofore been operating had already been granted; and the ordinance, at most, only related to some regulatory matter which the last-cited cases held it was competent for the parties to make, and that in doing so no franchise granting act was involved. The ordinance expressly stated that it should

not be construed as granting any additional franchise or to revive or renew any expired franchise, but that its provisions, and its duration for only seven years, should affect and apply only to the unexpired time of previously granted franchise or franchises. Under similar facts it was held, in the case of Russell v. Kentucky Utilities Co., 231 Ky. 820, 22 S. W. (2d) 289, 66 A. L. R. 1238, that the alteration of purely regulatory provisions, such as are involved here, was not prohibited by any law, constitutional or statutory, prescribing terms for the granting of franchise priveleges by operators of public utilities. Compare also City of Dayton v. South Covington & Cincinnati Street Railway Company, 177 Ky. 202, 197 S. W. 670, L. R. A. 1918B, 476, Ann. Cas. 1918E, 229, and Woodall v. South Covington & Cincinnati Street Railway Company, 137 Ky. 512, 513, 124 S. W. 843, 846. In the latter case it was expressly said, in dealing with the question now in hand, "there was no purpose to grant any new franchise to the street railway company. The only purpose was to adjust an old franchise to the present needs." Many other cases, as well as text authorities, could be cited to the same effect, but the question is too firmly settled to require it.

4. The argument in support of ground (4) is based upon the terms of section 3235dd-42 of our present statutes, requiring, inter alia, that every ordinance "granting any franchise of the right to use or occupy the streets," etc., shall remain on file at least one week for public inspection before final passage, and that, since ordinance 140 did not take that course, it is invalid. Of course, the basis of that argument is rested exclusively upon the ground that the regulatory measures provided for in ordinance No. 140 attacked herein were of the nature and kind referred to in that statute, i. e., grantings of franchises; but we have already seen that such is not true, and it necessarily follows that this ground must also be disregarded.

5. The contention embodied in ground (5) is more or less vague, and we are not sure that we fully comprehend what is meant thereby. But, assuming that counsel's purpose is to attack the requirement of the taking effect of an ordinance upon the act of a private individual, then the answer is that the ordinance in this case contains nothing but contractual obligations, relating to regulatory matters pertaining to the opera-

tions incident to the exercise of the franchise already possessed by the street railway company. Besides, the Lutes Case, supra, and other prior cited ones, expressly uphold like transactions relating to like conditions.

There is another argument made in briefs (but which is not classified in the pleadings) to the effect that the city had no right to consent to the use of busses upon its streets for transportation of passengers, in lieu of or as an aid to the same service performed by street cars running on fixed tracks. But we have heretofore decided that question adversely to the contention of counsel in a great number of cases. Such a change in motive power and transportation vehicles is permitted in order to meet changed and altered conditions, since, in doing so, the service contracted for in granting the franchise is not interfered with by the change, but is continued to be carried out and performed, in a manner to meet new conditions, and at the same time to not be in the least detrimental to the safety and convenience of the traveling public. On the contrary, the changes from the old street railway method of transportation to that furnished by busses are plainly in furtherance of a more convenient and safer method of traveling and also with the removal of many objectionable features incident to street railway transportation.

The questions involved have not been elaborated upon to the extent that might have been done—the excuse for which is that they have all been adversely determined against plaintiff's contention in the cited cases and many others that could have been cited. Wherefore, for the reasons stated, the judgment is affirmed.