**CITY OF OWENSBORO, Kentucky, Appellant,**

v.

**EVANSVILLE & OHIO VALLEY TRANSIT COMPANY, etc. d/b/a Owensboro City Transit, Appellee.**

Court of Appeals of Kentucky.

Dec. 12, 1969.

Gilliam & Moore, Hugh D. Moore, Owensboro, for appellant.

William L. Wilson and George S. Wilson, III, Wilson & Wilson, Owensboro, for appellee.

CULLEN, Commissioner.

In this declaratory judgment action brought by the City of Owensboro against the Evansville & Ohio Valley Transit Company the circuit court entered judgment upholding the validity of a contract between the city and the transit company under which the city agreed to subsidize the operation of a city bus system by the transit company. The city has appealed, asserting various grounds on which it claims the contract is invalid.

The appellee filed a motion to dismiss the appeal on the ground that the appellant had designated only a partial record and had not filed a statement of points, CR 75.01, 75.04. The motion was overruled, but the appellee undertook to file a renewed motion on the same ground, which was passed to the merits. The designation of record designated "the entire record herein, excepting only the briefs of the Appellant and the Appellee herein filed in the record." We overruled the original motion because it was our opinion that the exclusion of the briefs from the designation did not mean that the designation was of less than the "complete record" within the meaning of CR 75.04. We continue to adhere to that view and we hereby overrule the renewed motion. This brings us to the merits.

Early in March 1966 the then holder of the city bus franchise in Owensboro ceased operations, leaving the city temporarily without any bus service. In the latter part of March the city officials prevailed upon the appellee herein, Evansville & Ohio Valley Transit Company, to provide interim bus service pending the granting of a new franchise. On March 25 advertisement was made for a new franchise. Bids were received from the appellee and from another company. The city found the appellee's bid to be the better and on April 15 awarded the franchise to the appellee. The franchise was for a term of 10 years. It required the transit company to furnish "reasonable, adequate and efficient motor bus service," charging "only reasonable rates," and to provide "attractive, safe and comfortable vehicles." The franchise document recited the payment of a consideration of $25 by the transit company to the city. Following the granting of the franchise the transit company continued the operation which it previously had commenced on an interim basis.

On April 27, 12 days after the franchise was granted, the mayor and the city clerk of Owensboro entered into a contract in the name of the city, with the transit company, which recited that the transit company was entitled to a net annual profit equal to five percent of its gross revenues, after payment of operating expenses including all taxes, and which obligated the city to pay out of its funds such amount as necessary to achieve such a profit. The only specific obligation imposed on the transit company, under its contract, was "to immediately establish and maintain a mo-

tor bus transportation system in the City of Owensboro and to provide safe, adequate and comfortable buses for use by the public." The contract recited that the franchise theretofore granted to the transit company was made a part of the contract; however, whereas the franchise specified a fixed term of 10 years, the contract provided for an initial term of only three years, with the option in the transit company to renew for two additional three-year periods and one one-year period.

On May 27 the board of commissioners adopted a resolution reciting that the mayor and city clerk "are hereby authorized" to execute on behalf of the city the contract which theretofore had been executed on April 27.

From April 27 through December 30, 1966, the city paid $17,099.17 to the transit company under the subsidy contract. In January 1967 the board of commissioners decided that it would no longer honor the contract. The transit company nevertheless continued to operate and to send bills to the city for subsidy payments, which bills, by the end of March 1968, amounted to $36,353.86. In April 1968 the transit company announced to the city that it would terminate bus service unless the city made the subsidy payments. The city then brought the instant action seeking a declaration of rights. The complaint, in the name of the city, was signed by the city attorney. Numerous grounds of invalidity of the contract were alleged, but as hereinbefore stated, the circuit court adjudged that the contract was valid in all respects.

The initial contention of the city, on this appeal, is that the contract in question is invalid because it was let without bids in violation of KRS 89.590(2). That statute requires, as to cities such as Owensboro, that before the city shall enter into any contract involving the expenditure of more than $1,000 the board of commissioners shall by resolution specify the nature of the work to be contracted for; the city manager shall advertise for and receive bids for the work; and the contract shall be let by the board of commissioners to the lowest responsible bidder. Admittedly the contract in issue contemplated the expenditure of much more than $1,000, and admittedly there was no advertisement for or receipt of bids. Thus, prima facie, there was a plain violation of the statute.

The appellee argues that the contract was simply an *amendment* of the previously granted franchise, and under a line of decisions of this court a franchise may be amended without advertising for bids. The cases relied on include Scott v. Cincinnati, N. & C. Ry., 268 Ky. 383, 105 S.W.2d 169; Union Light, Heat & Power Co. v. Covington, 246 Ky. 663, 55 S.W.2d 667; and Russell v. Kentucky Utilities Company, 231 Ky. 820, 22 S.W.2d 289, 66 A.L.R. 1238. The cited cases stand for the proposition that, without advertising, a franchise may be amended as to *regulatory details* upon a *change of conditions*.

In the instant case there was no change of conditions. The record shows that *before the franchise was granted* the city officials and representatives of the transit company discussed the possibility of the city's subsidizing the bus system, and the city officials, while holding out no promises of a subsidy, stated that they would "negotiate toward an arrangement * * * to guarantee * * * a net profit equal to 5% of gross revenues." So the circumstances and conditions which prompted the execution of the subsidy contract were known and being considered even before the franchise was granted.

We do not believe that the provisions of the subsidy contract can fairly be considered to deal only with regulatory details. The franchise required the transit company to furnish a bus service in consideration solely of the income to be received from fares. The change made by the contract, under which the city, instead of paying nothing, was to pay $25,000 a year, or more, can hardly be treated as a matter of mere detail. In our opinion the contract

in effect created an entirely different franchise. As held in City of Princeton v. Princeton Electric Light & Power Company, 166 Ky. 730, 179 S.W. 1074, a city cannot advertise one kind of a franchise and sell another—"the only thing which can be lawfully sold is the thing which has been advertised for sale." And as said in Russell v. Kentucky Utilities Company, 231 Ky. 820, 22 S.W.2d 289, " * * * the validity of the transaction will depend on whether the real purpose of the parties was to grant a franchise or simply to obtain a modification in the exercise of an existing franchise." When the city here advertised a franchise with no subsidy, and then in less than two weeks executed a contract to the successful bidder giving him a substantial subsidy, there cannot be said to have been a fair attempt to comply with advertising requirements.

■ There is a further consideration that negatives the validity of the appellee's franchise-amendment argument. It is that KRS 89.590(2) requires advertisement for bids for any contract calling for an expenditure of more than $1,000, without regard to whether the expenditure is in connection with a *franchise*. Ordinarily, a franchise does not call for any expenditure by the city; any payment involved is by the holder of the franchise to the city. So, cases holding that a franchise may be amended without complying with the constitutional requirements for *franchise advertisement* are not authority for the proposition that a franchise amendment calling for an expenditure by the city of more than $1,000 may be made without compliance with the *statutory advertising requirement* for contracts involving such expenditures.

It is our conclusion that there was a violation of KRS 89.590(2).

The appellee argues that even if there was a failure to comply with the statute the city is estopped to assert the resulting invalidity of the contract. However, the appellee has no authority supporting that

argument, and all of the pertinent considerations seem to militate against the argument.

In the first place, there are little or no equities on the side of the transit company, to call for invoking an estoppel. When the contract was executed the company already was under a contractual obligation to provide a bus service without subsidy. It made no material new promise in consideration for the subsidy. It had not been promised a subsidy when it bid for the franchise. It was not overreached, because it acted throughout with the advice of able counsel (different, however, from the counsel who represent the transit company in this litigation). It did nothing in reliance upon the contract that it was not already obligated to do under the franchise. If there was any unfairness in the transaction it was in giving the transit company a subsidy without giving any other prospective bidder a chance to offer service on a subsidy basis. The city did not receive any unconscionable advantage from the transaction.

■ Even if there were substantial equities on the side of the transit company it is doubtful that an estoppel could be invoked against the city. This court has held consistently that a statutory requirement of advertisement for bids is "jurisdictional" and the city is without power to enter into a contract without such advertisement. See City of Hartford v. King, Ky., 249 S.W.2d 13; City of Sebree v. Powell, 221 Ky. 478, 298 S.W. 1103; Lynchburg Foundry Co. v. City of Pikeville, Ky., 246 S.W.2d 594. A city cannot be estopped from asserting the invalidity of unauthorized acts by its officers. See Louisville Extension Water District v. Diehl Pump & Supply Co., Ky., 246 S.W.2d 585; Freeman v. City of Corbin, Ky., 254 S.W.2d 497; Monticello Electric Light Co. v. City of Monticello, Ky., 259 S.W.2d 486; 28 Am.Jur.2d, Estoppel and Waiver, sec. 129, pp. 794 to 797. Specifically, as to estoppel to deny the validity of a franchise let without competitive bidding, there is authority

that there is no estoppel because failure to comply with bidding requirements is not a mere irregularity and the city is without power to grant a franchise without such compliance. See Annotation, 7 A.L.R. 1248 at 1256.

With respect to bidding requirements, McQuillin says (10 McQuillin, Municipal Corporations, 3rd Ed., 214):

"* * * These provisions exist to protect the citizens and taxpayers of the municipality from unjust, ill-considered, or extortionate contracts, or those showing favoritism, and if the municipality is suffered to disregard them and the other contracting party is, nevertheless, permitted to recover for the property delivered or the services rendered, either on the ground of ratification, estoppel, or implied contract, then it follows that the statute or charter provisions can always be evaded and set at naught. * * *"

■ We think it is of no significance that at the time when the Owensboro Board of Commissioners made the decision to repudiate the contract its membership consisted substantially of the same persons who were members when the contract was executed. In at least one of our cases the city officials who were permitted to repudiate a contract were the same ones who had made the contract. See Lynchburg Foundry Co. v. City of Pikeville, Ky., 246 S.W.2d 594. We see no valid reason why the attack on the contract should have to come from a citizen or from an officer other than one who made the contract, because in any event it is the city's money that is being protected. If an erring officer sees the error of his ways, why should he not be permitted to institute appropriate proceedings to correct the wrong? In the instant case the complaint in the name of the city was signed by the city attorney. Surely he would have the right to attack the contract, and it seems to us immaterial that the board of commissioners also was of a frame of mind to attack the contract.

■ It is our conclusion that there is no basis for a claim of estoppel, and that the contract should have been declared invalid for failure of compliance with KRS 89.-590(2).

The city has asserted other ground of invalidity of the contract, which we do not reach and the decision of which we reserve.

The judgment is reversed with directions for further proceedings in conformity with this opinion.

All concur.