**Anthony BECKER, et al., Plaintiffs,**

v.

**Peter CONN, et al., Defendants.**

**Civ. A. No. 77–70.**

United States District Court,
E. D. Kentucky,
Covington Division.

March 18, 1980.

Motion to Amend Judgment Denied
May 28, 1980.

Michael O'Hara, Legal Aid Society, Cincinnati, Ohio, for plaintiffs.

Ann Hunsaker, Frankfort, Ky., for defendants.

1. This statement of facts is substantially derived from plaintiff's memorandum.

## MEMORANDUM OPINION

BERTELSMAN, District Judge.

This case involves the issue whether or not a pretermination hearing is required, either under principles of due process, or under the social security laws of the United States, when a state terminates a welfare program, because a state statute requires its termination when the rate of unemployment falls below a statutorily prescribed level. The case also involves issues of federal jurisdiction and abstention.

## FACTS

The facts of this case, are as follows: [1]

In July of 1975, the Aid to Families with Dependent Children-Unemployed Fathers (AFDC–UF) Program was put into operation in Kentucky, pursuant to K.R.S. 205.-222 and K.R.S. 205.223. This federal/state categorical assistance program provided subsistence benefits to families with needy children where both parents were in the home and where the father was unemployed. 42 U.S.C. § 607.

This public assistance program continued uninterrupted until on or about January 29, 1977. At that time, defendants issued a notice to all AFDC–UF recipients that the AFDC–UF Program would be discontinued effective April 1, 1977, (i. e., final payment would be made for March). This January notice advised UF recipients that action was being taken in accordance with K.R.S. 205.223 "which requires that the (AFDC–UF) Program become inoperative when the statewide rate of unemployment drops below 5.5 percent based upon a four-month moving average."

In fact, the unemployment rate based on a four-month moving average had dropped below 5.5 percent effective November of 1976. These statistics are normally available to defendants in the middle of the following month. However, Defendant Huecker was apparently unaware of this drop until January of 1977. Although the four-month moving average, by the defend-

ants' own computation, had fallen below 5.5 percent, in November of 1976, defendants decided to continue the program for an additional two to three months. Defendants' reasons for continuing the program were not specifically authorized by the statute upon which defendants were relying, K.R.S. 205.223. This statute ostensibly permitted reinstatement of the program only after the four-month average would again reach 6 percent, which did not occur until March. Furthermore, defendants were not officially aware of the increase until April.

Defendants decided to continue the program at that time for a variety of administrative reasons. They wanted "administrative lead time." Additionally, Defendant Huecker was considering the Kentucky history of seasonal unemployment, unemployment trend information and potential administrative confusion.

Relying again on similar considerations defendants later decided to extend the program beyond the March deadline. They issued a March 1977 notice to that effect to all recipients then eligible for AFDC–UF. This continuation occurred in March, although defendants did not yet have the official unemployment rate statistics for March until mid-April, at which time the four-month rate had reached 6 percent.

The program continued again through June. Then on June 25, 1977, defendants issued another notice to all UF recipients advising them at that time that the program had already been discontinued, as the moving average had again dropped below 5.5 percent. Recipients were not advised of any right to a hearing or continued benefits. This time defendants did not allow the program to continue for another two months, as they had in January.

Named plaintiffs and other recipients made timely requests for a hearing and continued benefits. Defendants did not respond and, in fact, discontinued the program effective June 1977.

On June 12, 1977, plaintiffs filed suit requesting preliminary and permanent injunctive relief against defendants' actions to terminate the program. On July 19, 1977, in response to this suit, defendants issued a supplemental notice advising recipients again that the program had been terminated in June, due to the drop in the unemployment rate. This notice further advised recipients that *no* August benefits would be paid and that any hearing requests would be rejected. This notice did not advise recipients of the *method* by which a hearing could be requested and benefits continued.

On July 22, 1977, this court entered findings of fact and conclusions of law holding that recipients were denied adequate prior notice of the termination and opportunity to be heard prior to termination of the program. Accordingly, on July 26, 1977, the court issued a temporary restraining order prohibiting discontinuance of the program and July benefits were subsequently paid.

On August 18, 1977, defendants sent hearing notices to all AFDC–UF recipients advising them that a single group hearing would be held August 31, 1977, at 9:00 A.M. in Frankfort. The notice further advised that

"... the issue is whether the statewide rate of unemployment in Kentucky, as published by the Department for Human Resources in cooperation with the United States Department of Labor, Bureau of Labor Statistics, *dropped below 5.5 percent for a four-months moving average during May 1977, thus necessitating the cessation of the AFDC–UF program in accordance with the provisions of K.R.S. 205.223(2).*"

The sole issue to be decided at the hearing was whether the unemployment rate was sufficiently low to permit termination of the program.

On August 31, 1977, this court denied plaintiffs' motion for a preliminary injunction, holding preliminarily that the July 19 and August 18 notices combined were sufficient to comport with due process. Plaintiffs appealed the Order denying the preliminary injunction to the United States Court of Appeals for the Sixth Circuit. The

Court of Appeals held that Judge Siler did not abuse his discretion in denying the preliminary injunction, affirming his decision with directions to dispose of the case on its merits at the earliest practicable time.

Also on August 31, 1977, the state administrative hearing was held. The hearing officer took evidence on method of computation and on defendants' discretion to continue the program beyond June. An accurate transcript of the hearing has been stipulated and filed with the court. The transcript reveals that, at the hearing, the hearing officer made no holding as to whether the benefits should terminate as of the hearing.

Benefits were not continued to any recipients after the July 19th notice, not even to those recipients who had made timely requests for hearings. When the July 19th notices went out, the program was, at that time already terminated so that the August 31st hearing was actually post-termination.

The administrative hearing officer entered his decision on November 30, 1977, affirming defendants' determination to end the AFDC–UF Program. That administrative decision is currently on review to the Campbell Circuit Court.

Following the above events, cross-motions for summary judgment were filed by the plaintiffs and the defendant. Further, the defendant filed a motion to dismiss based on lack of subject matter jurisdiction, and the federal abstention doctrine.

## ISSUES

Therefore, inasmuch as both parties agree that there are no issues of material fact, the following issues are presented for decision by the court at this time:

(1) Does this court have jurisdiction of the subject matter of this action?

(2) If the court does have jurisdiction, should it abstain from deciding this action under principles of the federal abstention doctrine?

(3) Is the defendant immune from suit herein by virtue of the Eleventh Amendment?

(4) Was a pretermination hearing required before the Commonwealth of Kentucky could discontinue the welfare program,

(a) Under the principles of due process, or

(b) Under applicable federal regulations.

For the reasons hereinafter stated, the court this date decides that it does have jurisdiction of the subject matter; that abstention would be inappropriate; that the plaintiffs can proceed in spite of the Eleventh Amendment, since they concede that they are entitled only to declaratory relief; that a pretermination hearing was not required under the circumstances of this case, or if it was required, the plaintiffs are still not entitled to any relief, inasmuch as they admit that the defendant acted properly in discontinuing payment of welfare benefits. Therefore, the complaint herein must be finally dismissed. The court's reasoning in arriving at the above determinations is set forth below with respect to each issue involved herein.

## THIS COURT HAS JURISDICTION OF THE SUBJECT MATTER OF THIS ACTION

Defendant attacks the subject matter jurisdiction of this court on the basis of *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), which held that the jurisdiction of a federal district court did not encompass claims that state welfare regulations were invalid because in conflict with the Social Security Act. The defendants' memorandum on this issue recognizes that plaintiffs assert, in addition to their Social Security Act claims, a claim of deprivation of procedural due process and acknowledges that such a contention would vest this court with jurisdiction, pursuant to 28 U.S.C. § 1343, if it is not frivolous. Defendant claims, however, that the claim is totally insubstantial and frivolous.

■ Not to prolong this opinion, suffice it to say here, that the court is of the opinion that, although it disagrees with the

merits of the plaintiffs' due process argument, that argument raises legitimate issues and is not insubstantial or frivolous. Therefore, the court does have jurisdiction. The court also has pendent jurisdiction to consider plaintiffs' arguments based on federal statutes and regulations, although under *Chapman, supra*, it would not have independent jurisdiction to consider these issues. *See Dugas v. American Surety Company*, 300 U.S. 414, 57 S.Ct. 515, 81 L.Ed. 720 (1937).[2]

## CONSIDERING THE FACTS AND HISTORY OF THIS CASE, ABSTENTION WOULD BE INAPPROPRIATE

Defendant argues that this court should abstain in this matter, pending the decision of the state courts on the appeal from the decision made following the administrative hearing of August 31, 1977. The record of the state court proceedings has not been filed in this record, but the court believes that the issues before the state court are whether or not the defendant had any discretion to continue the payment of benefits for a period of time after the percentage of unemployment fell below the required level, and, if such discretion exists, whether it was abused. Obviously, this would require the interpretation of a state statute, namely K.R.S. 205.223.

A learned text writer has stated that there are actually four abstention doctrines.

Thus abstention is variously recognized (1) to avoid decision of a federal constitutional question where the case may be disposed of on questions of state law; (2) to avoid needless conflict with the administration by a state of its own affairs; (3) to leave to the states the resolution of unsettled questions of state law; and (4) to ease the congestion of the federal court docket. These various doctrines overlap at times, and the courts have not always distinguished them clearly, but separate consideration of them will con-

duce to clarity of analysis. Wright, *Federal Courts*, 218, § 52.

In the succeeding section, the author states that there is a fifth type of abstention, where a federal court is asked to enjoin proceedings in the state court. Id. at § 52A.

The plaintiff relies principally on the recent decision of the Supreme Court of the United States in *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). This case involved a federal injunction against state court proceedings, a matter which gives rise to especially delicate considerations of federal-state comity. It must be noted that the instant case does not involve the enjoining of a state court proceeding, in that the state court has voluntarily placed the action pending therein in abeyance, pending the decision of this court. Therefore, many of the considerations which compelled the Supreme Court of the United States to order abstention on the facts of *Moore v. Sims, supra*, are not present here.

Rather, this case involves policy considerations inherent in Professor Wright's first three categories, as set forth above. Primarily, this is a case falling into Wright's Category (1), which he summarizes as follows.

The first of these doctrines, and the most clearly established, comes in cases where state action is being challenged in federal court as contrary to the federal constitution, and there are questions of state law that may be dispositive of the case. This is usually referred to as the Pullman doctrine, from the case of *Railroad Commission of Texas v. Pullman Co.* [1941, 61 S.Ct. 643, 312 U.S. 496, 85 L.Ed. 971.]

In the instant case, if the state court should decide that the defendant had discretion to continue the benefits for the period claimed by the plaintiffs, and that such discretion had been abused, all matters of state administrative law, a decision by this

---

**2.** It is clear that if a federal court can exercise jurisdiction over a principal cause of action, it may also have jurisdiction over proceedings secondary to the action even though there

would not be jurisdiction independent of the principal action. *See* 1 Moore, *Federal Practice* ¶ 0.90[3].

court on the federal questions raised would be unnecessary.

*Moore v. Sims* set forth three considerations to be used in reaching an abstention decision. 99 S.Ct. at 2380.

(1) Whether a federal court will be first to interpret state law without the benefit of state court consideration under circumstances where a constitutional determination is predicated on a reading of a state statute that is not binding on state courts and may be discredited at any time.

(2) The need for a concrete case or controversy.

(3) The threat to our federal system of government posed by the needless obstruction to the domestic policy of the states by forestalling state action in construing and applying its own statutes.

Analysis of the situation before this court shows that these considerations are for the most part not involved in the present litigation. Concerning factor 1, the program in question has been discontinued, and no further state interpretations of the statute appear likely. This court's interpretation of the state statute would be res judicata in the related state court proceeding. With regard to factor 2, a concrete case or controversy is present, in that the plaintiffs posted a bond in order to obtain the temporary restraining order granted by this court, which may be subject to forfeiture, if the restraining order was found to have been wrongfully granted. F.R.Civ.P. 65(c). Further, benefits improperly paid would be subject to recoupment. *See* page 749, *infra.*

Lastly, as has been pointed out, the state court has already voluntarily abstained from a decision herein, pending a decision by this court.

The Court in *Moore v. Sims, supra,* points out that "the earliest abstention cases were rooted in notions of equity," and that trial court discretion plays a large role in making an abstention determination. 99 S.Ct. at 2379.

■ This court exercises its discretion in declining to use the abstention doctrine, and

to proceed to decide this case, even though the construction of a state statute is necessary in doing so. Additional factors persuading the court to exercise its discretion in this manner are:

(1) This matter has already been pending for some years, and has already been to the Sixth Circuit Court of Appeals on one occasion.

(2) This case will likely be appealed again, and if the Court of Appeals desires an interpretation of the state law by a state court, it can certify the question of law to the Supreme Court of Kentucky, under Rules of Procedure recently adopted by that court. *See Clay v. Sun Insurance Company,* 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960); Ky.Civil Rule 76.37.

(3) The action in this court was commenced and substantial proceedings had thereon before the commencement of the state court action.

(4) In the previous appeal to the Sixth Circuit Court of Appeals, no suggestion was made that abstention was proper, and substantial judicial effort by the federal appellate and trial courts would be wasted, if the doctrine were invoked at this time.

Therefore, this court will proceed to a decision on the merits, and will, in order to expedite appellate review indicate its decision on all issues presented herein, even though the same result could have been reached on fewer than all of the issues discussed.

### THE ELEVENTH AMENDMENT IS NOT A BAR TO THIS ACTION, INASMUCH AS THE PLAINTIFFS HAVE ABANDONED ALL CLAIMS EXCEPT THAT FOR DECLARATORY RELIEF

In *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), it was held that retroactive welfare benefits awarded by a federal district court to a plaintiff class violated the Eleventh Amendment, and that a federal court's remedial power under 42 U.S.C. § 1983, consistent with the Eleventh Amendment, is

necessarily limited to prospective injunctive relief and may not include a retroactive award which requires the payment of funds from the state treasury. The sequel to *Edelman* was *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), which reaffirmed *Edelman*, and reiterated that § 1983 did not abrogate the Eleventh Amendment immunity of the states, despite the Court's holding in *Monell v. New York City, Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

When Judge Siler ordered the payment of benefits in this court's temporary restraining order of July 27, 1977, the relief granted was prospective and avoided Eleventh Amendment pitfalls under the doctrine of the above cases.

Initially, at the oral argument on the motions for summary judgment, plaintiffs argued that this court could grant further benefits, but upon being referred to *Quern, supra,* judicially withdrew such claim, and now seek only declaratory relief.

Apparently what is at stake in making this declaratory determination is the state's right of recoupment of the welfare benefits, which is largely theoretical, and, more practically, the issue of the forfeiture of the bond posted by the plaintiffs as a condition of obtaining the temporary restraining order.

█ What is involved, then, is not an award of damages against the state, but, at this stage of the proceedings, plaintiffs' defense against potential claims by the state. Therefore, the Eleventh Amendment is not a bar.

## THE PLAINTIFFS ARE NOT ENTITLED TO A PRETERMINATION HEARING ON THE FACTS OF THIS CASE

### A. *Due Process*

In analyzing this question, it is necessary to consider the text of K.R.S. 205.222 and 205.223, which provide as follows:

205.222. *Assistance with unemployed male parent.*—The department may administer and expend any sums appropri-ated by the general assembly and all sums paid to the commonwealth by the secretary of the treasury of the United States as authorized by title IV of the social security act for the purpose of providing assistance of families with dependent children which have an unemployed male parent in the home. (Enact. Acts 1974, ch. 376, § 1).

205.223. *Conditions for applying K.R.S. 205.222.*—(1) K.R.S. 205.222 shall become operative on a month by month, statewide basis upon a determination by the secretary of the department for human resources that the following conditions exist:

(a) The statewide rate of unemployment in Kentucky, as published by the department for human resources in cooperation with the U.S. department of labor, bureau of labor statistics, exceeded six percent (6%) based upon the previous four (4) months moving average;

(b) The assistance authorized under the provisions of K.R.S. 205.222 is eligible for federal financial participation under title IV of the social security act or other federal law;

(c) The programs described in the executive budget for 1974–76 and funded in Acts 1974, chapter 81 will not be adversely affected by implementing the provisions of K.R.S. 205.222;

(d) The assistance authorized under the provisions of K.R.S. 205.222 can be implemented by the department for human resources without increasing the total general fund appropriation for that department, plus any additional funds that may be allotted under part six (6), paragraph 13 of Acts 1974, chapter 81; and

(e) Part six (6), paragraph 14 of Acts 1974, chapter 81 shall apply to the provisions of this section and K.R.S. 205.222.

(2) *K.R.S. 205.222 shall become inoperative when the statewide rate of unemployment in Kentucky, as published by the department for human resources in cooperation with the U.S. department of labor, bureau of labor statistics, drops below 5.5 percent based upon the previ-*

*ous four (4) months moving average.* (Enact. Acts 1974, ch. 376, § 2(1), (2).) (Emphasis added).

Plaintiffs contend that, although the defendant had determined that the statewide rate of unemployment had fallen below the prescribed level, pretermination hearing and notice were required prior to termination of the program. It should be noted that, following the granting of the temporary restraining order by Judge Siler in this action, plaintiffs were granted a post-termination hearing, at which they were satisfied that the unemployment statistic had been properly computed, a fact which they now judicially admit.

Plaintiffs contend here, however, that they would be entitled to benefits up to the point that the hearing was held, even though the hearing determined that the computation of the unemployment rate was proper. They also contend that the defendant had discretion to continue the program for a period of time before termination to soften the impact of the cessation of benefits upon the welfare clients, and that they were entitled to a pretermination hearing as to whether or not that discretion was properly exercised.

The plaintiffs rely for their due process argument on *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). In response, defendant points out that the doctrine of that case has been considerably narrowed in subsequent cases, especially *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

On reading both of these cases very carefully, this court finds that the apparent broad sweep of *Goldberg* was greatly restricted by *Mathews*. *Mathews* laid down the following three tests to be applied in a case such as this, where the issue is the existence of a right to a pretermination hearing.

. . . first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safe-

guards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18.

An analysis of the factual situation now presented for the court's consideration reveals that only the first of the *Mathews* factors tends to support the plaintiffs' argument. It is conceded that the welfare program here involved is based on financial need, and termination of the program might result in some of the clients' being left without the means of subsistence. In this respect, the instant case is similar to *Goldberg v. Kelly, supra.*

■ However, application of the second and third of the *Mathews* factors compels the conclusion that a pretermination hearing was not required under these circumstances, despite the applicability of the first factor. This is true, whether or not K.R.S. 205.223 vests any discretion in the defendant to continue the program after the unemployment rate "drops below 5.5 percent based upon the previous four-months moving average." K.R.S. 205.223(2).

■ So that the record may be clear, this court, having chosen not to abstain from decision of this case because an interpretation of state statute is involved, here holds that K.R.S. 205.223 vests the state official with no discretion whatever, and requires termination of the program when the unemployment rate falls below the prescribed level. Neither can the testimony of a state official in a deposition change this result, clearly mandated by the statutory language, nor can the fact that the official erroneously exercised some discretion in continuing the benefits for an extra period of time in early 1978. A governmental agency cannot be forced to violate the law by the doctrine of estoppel. *City of Owensboro v. Evansville & Ohio Valley Transit Company*, 448 S.W.2d 375 (Ky.1969); *Vaughn v. City of Williamsburg*, 245 Ky. 339, 53 S.W.2d 690 (1932).

If the state official had no discretion to continue the program, then the only issue on which a hearing might have been held was whether or not the unemployment statistic had been properly computed. The unemployment rate to which the welfare program is keyed is a standard statistic, determined substantially by the United States Department of Labor, Bureau of Labor Statistics, in a technical manner, and the type of statistic of which an erroneous computation is unlikely. Also, a hearing before the public official in charge of the welfare program would be of no value in determining such statistic. This is the second factor of *Mathews v. Eldridge*. Further, there would be a great administrative burden and delay in giving notice to all recipients of a welfare program keyed to this or other economic statistics. The probability of public monies being improperly paid, as happened here, is also great. Thus the third factor of *Mathews v. Eldridge* also militates against requiring a pretermination hearing under these circumstances.

To facilitate appellate review of this decision, the court holds in the alternative that, even if the official had discretion to continue the program for a period after the prescribed unemployment rate was reached, a pretermination hearing would not be required under the factors of *Mathews*. The official would not require a hearing to determine the impact of a discontinuance of the program, or the extent to which its impending discontinuance was known to the recipients. This would be a matter of administrative notice. The burden on the government would be equally as great, as if the hearing were on the computation of the statistic.

An additional ground for the decision reached by this court lies in the fact that plaintiffs admit that the unemployment statistic was properly computed. Thus, if the official has no discretion to continue it regardless of that fact, plaintiffs admit that defendant has a right of recoupment for those benefits paid at a time when they were not authorized. The right of recoupment under such circumstances was recognized both in *Goldberg v. Kelly*, 397 U.S. at 266, 90 S.Ct. at 1019, and the applicable social security regulations. 45 C.F.R. § 233.20(a)(12)(i)(A)(2). *See Himmler v. Califano*, 611 F.2d 137 n. 3 (1979).

B. *The Social Security Regulations*

Plaintiffs argue that applicable federal regulations require that a pretermination hearing be held under the circumstances of this case, and that benefits be paid until such a hearing can be held. The plaintiff relies for this argument on 45 C.F.R. § 205.10(a)(5) and § 205.10(a)(6).

The court has held that, although it would not have jurisdiction to consider this argument, presented by itself, it does have pendent jurisdiction to consider it in connection with the plaintiffs' due process argument.

■ The court holds that the clear language of 45 C.F.R. § 205.10(5) demonstrates that a hearing need not have been held under the circumstances presented here. The last sentence of that section reads:

A hearing need not be granted when either State or Federal law require automatic grant adjustments for classes of recipients unless the reason for an individual appeal is incorrect grant computation.

Plaintiffs have argued that 45 C.F.R. §§ 205.10(a)(4)(i)(A) and 205.10(a)(4)(iii) require more timely notice must be given than provided by the defendants. The court is inclined to agree with Judge Siler's reasoning when he denied the preliminary injunction noting that the July 19th termination notice coupled with the August 18th notice of hearing provided the plaintiffs with adequate notice.

### CONCLUSION

For the above reasons, a final judgment is this day entered dismissing the complaint.

### ON MOTION TO AMEND JUDGMENT

This matter is before the court on the motion of the plaintiff to amend the memorandum opinion dated March 17, 1980. The plaintiff has moved the court to alter or amend its judgment to:

(1) Include a declaration that plaintiffs were entitled to receipt of AFDC–UF benefits for July 1977, pursuant to the temporary restraining order issued by Judge Siler on July 26, 1977;

(2) Include a finding that under the methodology used in 1974, when K.R.S. 205.223 was passed by the General Assembly the four-months moving average for unemployment in Kentucky was not under 5.5 percent until July 1977; and

(3) Assess costs and attorney's fees against defendants.

Although the motion must be denied, the plaintiffs do raise an issue not addressed by the court in its initial opinion, which is treated below.

■ The plaintiffs argued, in seeking the temporary restraining order, that the defendant's action in terminating the program is subject to the timely notice provisions in regulations promulgated by the Department of Health, Education & Welfare. It is clear that if a state participates in the AFDC Program, it must comply with valid regulations issued by the Secretary of Health, Education & Welfare governing the program. *King v. Smith*, 392 U.S. 309, 333 n. 34, 88 S.Ct. 2128, 2141 n. 34, 20 L.Ed.2d 1118; *Rochester v. Baganz*, 479 F.2d 603 (3d Cir. 1973).

Plaintiffs argue that timely notice is required by 45 C.F.R. 205.10(4) which reads:

"In cases of intended action to discontinue, terminate, suspend or reduce assistance:

(i) The state or local agencies shall give timely and adequate notice, except as provided for in Paragraphs (a)(4)(ii), (iii), or (iv) of this section."

■ This section is headed "Hearings" and the court does not interpret it as being applicable here, where there is no right to a hearing. A reading of the entire regulation shows that notice and hearing are to be afforded if assistance is to be reduced or terminated due to some circumstance pertaining to the individual recipient or due to some change in the law, and then only when the change is under circumstances where the individual would have a right to some sort of hearing with regard to continued assistance. *See* § 205.10(a)(4)(iii).

■ If plaintiffs' argument were accepted, public monies would be required to be paid out after the program was required by law to be terminated. There was no change in the law, but rather the program was automatically terminated by existing law when the unemployment level fell below a certain point. *Kimble v. Solomon*, 599 F.2d 599 (4th Cir. 1978) is distinguishable for this reason. This was not "intended *action* to discontinue, terminate, suspend or reduce assistance," as contemplated by the regulation, but an *automatic* termination. A governmental program might be keyed to an economic index such as the consumer price index. One month the index may rise and the next fall. The court does not believe the regulation intended to require notice every time there would be a downward adjustment. Therefore, the court holds that no notice was required, and that the preliminary injunction should not have been granted.

■ With regard to the issue of which method to compute the unemployment statistics was proper, plaintiffs were frequently offered an opportunity by the court to introduce evidence on this issue, the latest occasion being at the hearing on the motion to modify the judgment. This opportunity was declined, even though the plaintiffs were on notice that the court was not abstaining but was exercising its jurisdiction over every issue in the case.

Therefore, the court has no choice but to hold that the plaintiffs have failed to meet the burden of persuasion on this issue, either legally or factually, and that this issue must be determined against them. Therefore,

IT IS ORDERED that the motion to amend the judgment dismissing the complaint in its entirety must be, and it is, hereby denied.